# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOSHUA L. BURTON,　　　　　) <br> 　　　　　　　　　　　　　　) <br> 　　　　Plaintiff,　　　　　　) <br> 　　　　　　　　　　　　　　) <br> 　　v.　　　　　　　　　　　　) <br> 　　　　　　　　　　　　　　) <br> CAROLYN W. COLVIN,　　　　) <br> Acting Commissioner of the Social ) <br> Security Administration,[1]　　　) <br> 　　　　　　　　　　　　　　) <br> 　　　　Defendant.　　　　　　) | Case No. CIV-12-439-FHS-SPS |

## REPORT AND RECOMMENDATION

The claimant Joshua L. Burton requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the decision of the Commissioner should be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born April 6, 1983 and was twenty-six years old at the time of the administrative hearing. (Tr. 35, 180). He completed the twelfth grade, and has worked as a fast food worker, glass cutter, general laborer, fast food cook, pizza delivery driver, and magnet inspector, but the ALJ found that only the glass cutting job qualified as SGA. (Tr. 24-25). The claimant alleges that he has been unable to work since January 1, 1993 (when he was nine years old), due to juvenile-onset diabetes and bi-polar disorder. (Tr. 226).

**Procedural History**

On May 17, 2007, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Tela L. Gatewood conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated August 5, 2010. (Tr. 13-27). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made her decision at steps four and five of the sequential evaluation. She

found that the claimant had the residual functional capacity (RFC) to perform a wide range of medium work, *i. e.*, he could lift/carry/push/pull fifty pounds occasionally and twenty-five pounds frequently. The ALJ also limited the claimant to interacting with co-workers and supervisors on a superficial basis but an inability to work with the general public. She specifically stated that other limitations discussed at the administrative hearing were not supported by the evidence. (Tr. 20-21). The ALJ thus concluded that the claimant was not disabled because he could "probably" return to his past relevant work as a glass cutter as actually performed, or alternatively, that there was work in the regional and national economies that he could perform, *e. g.*, kitchen helper, laundry worker II, or motel housekeeper. (Tr. 25-26).

## Review

The claimant contends that the ALJ erred by (i) determining the claimant could return to his past relevant work as a glass cutter as actually performed, and (ii) by failing to properly evaluate the claimant's grandmother's testimony at the administrative hearing. The undersigned Magistrate Judge finds that the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis.

The ALJ found that the claimant had the severe impairments of diabetes mellitus with retinopathy, bipolar disorder, depressed/dysthymic disorder, a personality disorder not otherwise specified with borderline and antisocial traits, and polysubstance abuse. (Tr. 17). The medical evidence reflects that when the claimant was a teenager, he received a great deal of inpatient and outpatient treatment at behavioral and psychiatric facilities in Alaska, Oklahoma, Texas, Nevada, and Idaho. (Tr. 295-506). His diagnoses

included bipolar spectrum disorder with psychotic features, juvenile-onset diabetes, depressive disorder not otherwise specified, oppositional defiance disorder, impulse control disorder, and polysubstance abuse including marijuana, alcohol, and others. (Tr. 295, 328, 339, 365, 376, 379, 470, 475, 479).

In 2007, Dr. Amy Gregory conducted an eye exam on the claimant and determined that he had mild background diabetic retinopathy in both eyes, and recommended tight control of diabetes to prevent the further progression of diabetic retinopathy. (Tr. 509). The claimant received regular treatment, including follow-up for his diabetes mellitus, at the Central Oklahoma Family Medical Center. During these office visits, he reported that he was unable to afford test strips to manage his diabetes. (Tr. 512-526). As to his mental health impairments, he was treated at the Mental Health and Substance Abuse Centers of Southern Oklahoma where he reported anxiety and was prescribed medications for his mental impairments. He missed three appointments in 2007 – October, November, and December. (Tr. 527-533, 561-572, 580-591). The claimant was admitted into their care on February 7, 2007, and discharged on September 15, 2009. The discharge papers indicate that the claimant had not met the goals and objectives identified at his intake, and that there was insufficient evidence of progress. (Tr. 582). A consultative examiner conducted a mental status examination of the claimant on August 20, 2007. (Tr. 536-539). As part of his history, she noted that the claimant reported being hospitalized for psychiatric reasons approximately ten times between the ages of fourteen and eighteen. (Tr. 537). She also noted his history of drug use, include a drug rehabilitation program in 2004. (Tr. 537). She diagnosed the claimant with cannabis

dependence in remission since December 2006, alcohol abuse in remission for one year, early onset dysthymic disorder, personality disorder not otherwise specified with traits of borderline and antisocial personality disorder, and type I diabetes. (Tr. 538). As to his ability to do work-related mental activities, she stated that the claimant could understand, remember, sustain concentration, and persist, but that his ability to socially interact and adapt to work situations was impaired by symptoms of personality disorder. (Tr. 539). A state reviewing physician found that the claimant had moderate restrictions in activities of daily living and difficulties in maintaining social functions, but no difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. (Tr. 552). The same reviewing physician found that the claimant was moderately limited in the ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public, but was not significantly limited in any other area. (Tr. 556-557).

The claimant testified at the administrative hearing as to his work history, as well as his physical and mental impairments. He stated that his bipolar disorder and diabetes management had interfered with his ability to perform his past jobs, and gave those impairments as reasons for the short length of time he worked at these jobs. (Tr. 41-43). He testified that he can drive but does not drive very often. (Tr. 44). As to his impairments, he testified that he struggled to maintain the proper blood sugar level and also had problems with his anger due his bipolar disorder. (Tr. 46). In particular, he stated that his blood sugar was high 90% of the time. (Tr. 47). He stated that he received treatment at the "free clinic," but it was so busy he was not always able to get in to see

the doctor. (Tr, 48). He stated that his doctor had moved and his could not obtain his medications for his mental impairments at that time. (Tr. 52). The claimant's grandmother also testified at the hearing, stating that the claimant had recently had a number of anger problems, particularly when relating to his family members. (Tr. 56-57).

In her written opinion, the ALJ summarized the claimant's hearing testimony and his grandmother's testimony, as well as the medical evidence. She noted that the claimant was often noncompliant with his diabetes medications, but his glucose levels had somewhat improved despite this fact. (Tr. 22). She further noted the claimant's psychiatric history, including suicidal ideation, from his teen years, and noted a gap in mental health treatment which extended from 2001 to 2007. (Tr. 23). She found that the claimant's childhood use of his diabetes as a means of manipulating his parents weighed against his present credibility as to the severity of his symptoms. Additionally, she found that his missed mental health appointments weighed against his credibility because he had reported progress including improved concentration, decreased impulsiveness, and good decisionmaking. (Tr. 23). Due to these factors, the ALJ found the claimant not credible, and only gave his grandmother's testimony some weight for similar reasons. (Tr. 23). Finally, the ALJ noted the consultative examiner's opinions as to the claimant's ability to interact and adapt to work situations being impaired, but pointed out that she did not indicate the claimant was precluded from "all" work activity, and thus afforded her opinion only "slight weight." (Tr. 24). The ALJ's assessment was incomplete for the following reasons.

First, the ALJ did not discuss whether she had conducted a proper longitudinal assessment of the claimant's impairments under 20 C.F.R. § 404.1520a(c)(1) ("Assessment of functional limitations . . . requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation."). Although she acknowledged the claimant's past mental health history, she specifically found that such treatment did not have a bearing on his mental health assessment for the relevant time period, because treatment notes from 1999 indicated he had "improved significantly," and there was a gap in his treatment. She used the mental health records from his teenage years to find him not credible, but discredited those same records as too distant to support his current allegations related to his mental health. Second, although the ALJ acknowledged that the record contained GAF scores, she only recited favorable ones from the claimant's childhood mental health treatment, ignoring numerous low GAF scores, *see, e. g.* Tr. 295, GAF of 35. "[A] GAF score between 41 and 50 indicates [s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e. g., no friends, inability to keep a job)." *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004) [quotation omitted] [unpublished opinion]. "Although the GAF rating may indicate problems that do not necessarily relate to the ability to hold a job," *Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. 2003) [unpublished opinion], "[a] GAF score of fifty or less . . . *does* suggest an inability to keep a job." *Lee*, 117 Fed. Appx. at 678 [emphasis added], *citing Oslin*, 69 Fed. Appx. at 947. Thus, the ALJ should have considered whether the claimant's substandard GAF scores were due to

occupational factors.  *See, e. g., Givens v. Astrue*, 251 Fed. Appx. 561, 567 n.4 (10th Cir. 2007) (noting that "the Commissioner argues that a low GAF score may indicate problems that do not necessarily relate to the ability to hold a job[,]" but finding that "[e]ven assuming this is true, the ALJ's decision does not indicate he reached the conclusion that Ms. Givens' low GAF score was due to non-occupationally-related factors.") [quotation marks omitted] [unpublished opinion].  Instead, the ALJ failed to consider the evidence at all.  *Ramirez v. Astrue*, 255 Fed. Appx. 327, 332 (10th Cir. 2007) ("'[T]he RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.'") [unpublished opinion], *quoting* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

Last, the ALJ failed to properly account for the claimant's grandmother's testimony.  Social Security Ruling (SSR) 06-03p provides the relevant guidelines for the ALJ to follow in evaluating "other source" opinions from non-medical sources who have not seen the claimant in their professional capacity.  *See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939.  SSR 06-03p states, in part, that other source opinion evidence, such as those from spouses, parents, friends, and neighbors, should be evaluated by considering the following factors: i) nature and extent of the relationship; ii) whether the evidence is consistent with other evidence; and iii) any other factors that tend to support or refute the evidence.  Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *4-6.  Here, the ALJ noted her testimony, but rejected it by referring to reasons she used to discredit the claimant's testimony.  The first problem with her reasoning is that she did not actually provide any

reasons specific to the claimant's grandmother as to why she rejected that testimony. *See Spicer v. Astrue*, 2010 WL 4176313, *2 (M.D. Ala. Oct. 18, 2010) (finding that an ALJ's rejection of a lay witness statement because it was not a substitute for an appropriate medical opinion must *not* be based on a rationale that "applies with equal force to every 'lay statement.'"). *See, e. g.*, *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) ("The ALJ found [claimant's wife] credible in her observations of her husband's activities, and the ALJ should not have discredited her testimony on the basis of its relevance or irrelevance to medical conclusions."), *citing* 20 C.F.R. § 404.1513(d). Second, while it may be appropriate for the ALJ to reject lay witness testimony that is based on the subjective complaints of a claimant when the ALJ has already determined that the claimant is not credible, *see, e.g., Valentine v. Commissioner Social Security Administration*, 574 F.3d 685, 694 (9th Cir. 2009) ("Mrs. Valentine's testimony of her husband's fatigue was similar to Valentine's own subjective complaints. Unsurprisingly, the ALJ rejected this evidence based, at least in part, on 'the same reasons [she] discounted [Valentine's] allegations.' In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."), she is not entitled to reject *all* lay witness testimony with a blanket statement such as the one that he used here. The ALJ is perfectly capable of separating the evidence that is based on the personal observations of the lay witness and, on the other hand, the evidence presented by the lay witness that is based on claimant's subjective complaints. *See also Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989) ("[W]here the record on appeal is unclear as

to whether the ALJ applied the appropriate standard by considering all the evidence before him, the proper remedy is reversal and remand.") [citation omitted].

Because the ALJ refused to discuss probative evidence inconsistent with her RFC determination, the Court finds she did not properly consider it. Instead, the ALJ should have discussed the evidence supporting her decision and explained her rejection of the evidence that did not. *See, e. g., Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). *See also Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) (remanding "for the ALJ to articulate specific findings and his reasons for ignoring . . . evidence."). Consequently, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis of the claimant's RFC. If on remand there is any adjustment to the claimant's mental RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

**Conclusion**

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 12th day of March, 2014.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma